UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRAIG BRADLEY,

    *Plaintiff*,

v.                                    CASE NO. 12-CV-10081

COMMISSIONER OF              DISTRICT JUDGE GERALD E. ROSEN
SOCIAL SECURITY,                MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and for Supplemental

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Security Income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 14.)

Plaintiff[2] was 23 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 8 at 83.) Plaintiff indicated that she is called Michelle now. (Tr. at 80, 83.) Plaintiff has never been employed for more than one week. (Tr. at 189.) Plaintiff filed the instant claim on September 29, 2008, alleging that she became unable to work on January 1, 2007. (Tr. at 162.) The claim was denied at the initial administrative stage. (Tr. at 100.) In denying Plaintiff's claim, the Commissioner considered learning disability and anxiety-related disorders as possible bases for disability. (*Id.*) On December 17, 2009, and in a supplemental hearing on June 29, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Michael Finnie, who considered the application for benefits *de novo*. (Tr. at 11-23, 27-51, 78-99.) In a decision dated August 27, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 23.) Plaintiff requested a review of this decision on September 20, 2010. (Tr. at 8-10.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on November 16, 2011, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On January 9, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.     Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S.

---

[2]As noted by Plaintiff's counsel in the motion and brief, (Doc. 11 at 5 n.1), Plaintiff identifies as a woman and thus will be referred to as 'she.'

2

521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r*

*of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

5

>Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
>Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since September 29, 2008, the application date. (Tr. at 17.) At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine, obesity, borderline intellectual functioning, posttraumatic stress

6

disorder, gender identity disorder, anxiety disorder and learning disorder were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 17-18.) At step four, the ALJ found that there was no past relevant work. (Tr. at 22.) At step five, the ALJ found that Plaintiff retains the residual functional capacity to perform a limited range of sedentary work. (Tr. at 18-22.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 23.)

  **E. Administrative Record**

  A review of the relevant medical evidence shows that Plaintiff was involved in a car accident when she was four years old, resulting in surgery to repair a fracture of her right femur. (Tr. at 283.) Plaintiff was noted to be "developing mentally within the Borderline Range" since third grade. (Tr. at 245.)

  On December 9, 2008, Plaintiff was examined by Disability Determination Services ("DDS") psychologist Thomas Rosenbaum, Ph.D. (Tr. at 256-61.) Dr. Rosenbaum noted that Plaintiff "gives his disability as panic attacks and anxiety." (Tr. at 256.) Dr. Rosenbaum also noted that Plaintiff:

> is a transgender male who has not undergone the surgery for sex change. He looks like and dresses like a woman and will be referred to as "she" for the remainder of this report. She has had hormone therapies and appears to have completely taken on the identity of a woman. She was last employed for about a week at Data Stat in September of this year. This is the longest she has ever held a job. Her job duty was telephone survey. She quit this job because it was "too stressful."

(Tr. at 256.) Plaintiff reported that she was "a B/C student in school in special education" since fourth or fifth grade because she failed either the third or fourth grade. (Tr. at 257.) Plaintiff stated that she "gets 'funny vibes' from everyone" and that she "has a boyfriend that she sees steadily." (*Id.*) Dr. Rosenbaum noted that Plaintiff "seems self-conscious about her transgender status,

7

although she has cross-dressed for at least ten years." (*Id.*) Plaintiff stated that she is "compulsive in her household cleaning" and does "all the chores around the house and prepares meals" in a mobile home that her boyfriend paid for. (*Id.*) At that time, Plaintiff was 5 feet 10 inches tall and weighed 106 pounds. (*Id.*) Plaintiff also reported that she was "sexually molested by her mother's boyfriend's employer from the age of twelve to seventeen." (Tr. at 258.) Plaintiff, along with her two brothers, testified as victims at the perpetrator's trial and the perpetrator was convicted and sentenced to twenty years in prison. (*Id.*)

It was also noted that Plaintiff "has had no formal psychotherapy for all of the traumas . . . [but] did receive some basic information-type counseling with Dr. Wakeen." (*Id.*) Dr. Rosenbaum diagnosed "Gender Identity Disorder, sexually attracted to both males and females[,]" "Generalized Anxiety Disorder, with panic episodes[,]" "Post-Traumatic Stress Disorder, chronic[,]" and "Learning Disorder, NOS (by history)." (Tr. at 260.) Dr. Rosenbaum noted Borderline Intellectual Functioning, assessed a GAF score of 60, and a prognosis of "[f]air to guarded." (*Id.*)

A Mental Residual Functional Capacity ("RFC") Assessment was completed by Paul Liu, D.O., on January 1, 2009. (Tr. at 262-65.) The assessment concluded that Plaintiff was moderately limited in the ability to understand and remember, carry out detailed instructions, maintain concentration for extended periods, and to complete a normal work-day and week without interruptions from psychologically based symptoms, but was otherwise not significantly limited in understanding, memory, and sustained concentration and persistence. (Tr. at 262-63.) The assessment also found that Plaintiff was moderately limited in her ability to interact appropriately with the general public, to respond appropriately to changes in the work setting, and to set realistic

goals or make plans independently of others, but was otherwise not significantly limited in social interaction or adaptation. (Tr. at 263.)

A Psychiatric Review Technique was completed on January 1, 2009, by Dr. Liu. (Tr. at 266-79.) Dr. Liu diagnosed "LD, NOS[,]" "Borderline Intellectual Functioning[,]" "GAD with panic episodes, PTSD chronic," and "Gender Identity Disorder[.]" (Tr. at 267, 270, 271, 273.) Dr. Liu found that Plaintiff was moderately limited in maintaining social functioning and in maintaining concentration, persistence, or pace, and was mildly limited in activities of daily living. (Tr. at 276.)

An MRI of Plaintiff's lumbar spine taken on September 6, 2009, showed "[d]egenerative changes within the lower lumbar spine . . . with moderate size disc herniation at L5-S1 that likely exerts mass-effect on the left S1 nerve root." (Tr. at 281.)

On January 28, 2010, Plaintiff was referred by DDS to Thomas Horner, M.D., for a consultative examination. (Tr. at 299-301.) At that time, Plaintiff was living "with a roommate / "kind-of" partner, Osiris Veicaga, also transgender identity (female to male), with whom she has been involved about two years." (Tr. at 299.) It was noted that Plaintiff was "on no medications currently and she has no hx [history] of psychiatric hospitalizations." (*Id.*) Plaintiff was assessed at the second grade level for arithmetic and high school level for reading. (Tr. at 300.) Plaintiff's Verbal IQ was 79, Performance IQ was 73, and Full Scale IQ was 74. (*Id.*) Dr. Horner also completed a Medical Source Statement on the same date which concluded that Plaintiff was not limited in her ability to understand, remember, and carry out simple instructions and that she was mildly limited in her ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions. (Tr. at 302.) Dr. Horner underlined "complex" in all these categories. (*Id.*) Dr. Horner also found Plaintiff to be mildly limited in her

9

ability to interact appropriately with the public, supervisors, co-workers, and to respond to usual work situations and changes in routine work setting. (Tr. at 303.)

On February 5, 2010, Plaintiff was examined by DDS physician J. L. Tofaute, M.D. (Tr. at 306-12.) Dr. Tofaute noted that Plaintiff was 5 feet 9 inches tall and was "moderately obese" at 254 pounds. (Tr. at 307.) Dr. Tofaute also completed a Medical Source Statement wherein he indicated that Plaintiff could frequently lift and carry 10 pounds, occasionally lift and carry 20 pounds, sit for 3-4 hours, stand for 1-2 hours, and walk for 4-5 hours in an 8-hour work day, that Plaintiff was unlimited in use of hands, and could frequently operate right foot controls and occasionally operate left foot controls due to occasional numbness in the left foot. (Tr. at 313-15.) Dr. Tofaute also concluded that Plaintiff should never climb stairs, ramps, scaffolds, or ladders, but could occasionally kneel, couch, and crawl and could frequently stoop. (Tr. at 316.) It was also found that Plaintiff should never work at unprotected heights or moving mechanical parts but could occasionally operate a motor vehicle. (Tr. at 317.) Dr. Tofaute noted that Plaintiff's "subjective complaints and MRI finding [were] not supported by clinical exam." (Tr. at 313.)

In her Daily Activity Report, Plaintiff indicated that, on a typical day, she showers, eats, goes to the library or sits at home alone, naps and watches television. (Tr. at 207.) Plaintiff indicated she has no problems with personal care, does not need reminders, prepares "complete meals" on a "daily" basis, cleans "daily," washes her clothing, goes out "about once a week," shops in stores for clothes and food, attends church every Sunday, and is able to handle finances, but that she is scared to go out alone. (Tr. at 208-11.)

At the most recent administrative hearing, when asked how her physical symptoms interfere with her ability to work, Plaintiff responded that she is "unable to stand and sit at long periods of times, my back starts bothering me as well as my legs. If I was – I would say, if I was working at

a job where I had to lift stuff, maybe, I couldn't do it. When I lift stuff I feel like some type of pressure going down my back and into my legs . . . . It's hard for me to bend over, even if I'm not lifting any thing or picking any up[.]" (Tr. at 35-36.) When asked if she could carry a gallon of milk, which weighs around eight and one-half pounds, Plaintiff responded, "Sometimes, sometimes I can, other times, like if I lift it out – to the refrigerator I end up dropping it because of the pain into my back and in my legs, causing me to just automatically just drop it, so the pain – you know, to stop." (Tr. at 36.) When asked whether she could stand for a total of two hours in an eight-hour workday, Plaintiff responded, "I really don't know. I probably could do it, it all just depends, it's – how far I'm walking, if I have to walk up stairs." (Tr. at 38.) When asked if she could sit for six hours out of an eight-hour workday, if she had an option to sit or stand, Plaintiff responded, "I don't think so." (Tr. at 39.) When asked what she did yesterday, Plaintiff responded, "Yesterday I just laid on the couch." (Tr. at 39.) When asked whether she ate anything all day or took a shower, Plaintiff responded, "No." (*Id.*) When the ALJ asked whether this is a typical day, Plaintiff responded:

> I would say it's typical. Some days are better than others, like I'll get up and out, eat or I will shower. Other – you know, probably like two or three days out of the week I won't eat or shower, I'll just lay there.

(Tr. at 40.) When asked whether pain or depression caused her to behave that way, Plaintiff indicated that "[s]ometimes it's pain, other times it's depression, just my nerves feel like they're shaking so bad I don't want to do nothing, or I can't do nothing." (*Id.*) Plaintiff testified that she has not been treated for depression and that she does "not have health insurance, so I don't know where I would go." (*Id.*) When questioned further, Plaintiff stated that she "had a Washtenaw Health Plan . . . where I was trying to be treated for my physical problems" and she agreed that such a plan covers indigents, but indicated that she did not ask anyone about possible services or

11

treatment for depression. (Tr. at 41.) When asked why the health plan stopped, Plaintiff answered, "It only lasts for a year . . . when it was [to be] renew[ed] I was homeless so I did not have an address, so to fill out the paperwork I didn't know that I had to renew, and then when I found out, I went up there, and they wasn't accepting it – they considered me a new client or a new patient because it expired so they wasn't accepting anybody at the – anybody." (Tr. at 42-43.) Plaintiff added that after she explained that she was homeless, the health plan gave her "a list of, like, places for dental[.]" (Tr. at 44.) Plaintiff stated that her anxiety "plays a part in not doing a lot of things," such as asking for services or going to school. (Tr. at 44-45.)

Plaintiff testified that she does not take any medication other than "over the counter Ibuprofen, so – to keep the swelling down, so, you know, it don't bring more problems like it has before." (Tr. at 41-42.)

The ALJ asked the VE to assume a person with Plaintiff's background who:

> could occasionally lift and carry 10 pounds; could stand and walk for at least two hours of an eight hour day, sit for six hours of an eight hour day, normal breaks and rest periods for both; no limitations with regard to pushing, pulling, operation of hand or foot controls; occasional kneeling, crouching; no climbing of ladders or scaffolds; occasional ramps and stairs. Further limited to simple, routine tasks consistent with unskilled work. No requirement for mathematical calculations, no cashier work, or telework. Further limited to occasional contact with the general public.

(Tr. at 48.) The VE responded that such a person could perform the 500 addresser jobs, the 1,200 cutter, paster, and press clippings jobs, and the 2,200 polisher, eyeglass frames jobs available in the State of Michigan. (Tr. at 48-49.) The VE further testified that an option to sit or stand at will would not have any effect on any of the above jobs. (Tr. at 49.) When asked by the ALJ, the VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles. (*Id.*) Finally, the VE answered that the need for frequent, unscheduled rest periods throughout the day would preclude full-time employment. (Tr. at 50.)

**F.     Analysis and Conclusions**

**1.     Legal Standards**

The ALJ determined in the alternative that Plaintiff retained the residual functional capacity to perform a limited range of sedentary work. (Tr. at 16-18.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

**2.     Substantial Evidence**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

13

Specifically, Plaintiff contends that: (1) the ALJ's residual functional capacity ("RFC") finding and hypothetical did not adequately portray Plaintiff's limitations caused by her severe impairments (Doc. 11 at 7-9); (2) the ALJ did not articulate any evidentiary support for the RFC determination as required by SSR 96-8p (*id.* at 9-11); and (3) the ALJ improperly discounted her credibility. (*Id.* at 11-12.)

### a. Credibility Findings

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at \*4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at \*3 (6th Cir. Feb. 11, 1999). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an

underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or, objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i) [D]aily activities;

(ii) The location, duration, frequency, and intensity of . . . pain;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v) Treatment, other than medication, . . . received for relief of . . . pain;

(vi) Any measures . . . used to relieve . . . pain.

15

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ thoroughly considered all the relevant factors and determined that Plaintiff's complaints of disabling impairments were not fully credible. (Tr. at 19-22.) After examining the record evidence, I suggest that substantial evidence supports the ALJ's credibility finding. Although Plaintiff has experienced trauma in her life, Plaintiff was never treated for anxiety, depression or any other mental health issues, nor was she ever hospitalized. (Tr. at 40, 258, 299.) In addition, Plaintiff's treatment for her physical issues has never gone beyond taking over-the-counter doses of Ibuprofen. (Tr. at 41-42.) Such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

Furthermore, I suggest that the record shows less than disabling mental impairments. Dr. Rosenbaum noted Borderline Intellectual Functioning, assessed a GAF score of 60, and a prognosis of "[f]air to guarded." (*Id.*) Plaintiff's Verbal IQ was 79, Performance IQ was 73, and Full Scale IQ was 74. (Tr. at 300.) I further suggest that the record is also devoid of any disabling physical impairment. Although degenerative changes were seen on an MRI taken on September 6, 2009 (Tr. at 281), Dr. Tofaute noted that Plaintiff's "subjective complaints and MRI finding [were] not supported by clinical exam." (Tr. at 313.)

In addition, none of the psychological or physical examining physicians found Plaintiff to have disabling impairments or symptoms nor did they find disabling effects in their Medical Source Statements. Dr. Horner found that Plaintiff was not limited in her ability to understand, remember, and carry out simple instructions and that she was only mildly limited in her ability to

16

understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions. (Tr. at 302.) In addition, Dr. Tofaute found that Plaintiff could frequently lift and carry 10 pounds, occasionally lift and carry 20 pounds, sit for 3 to 4 hours, stand for 1 to 2 hours, and walk for 4 to 5 hours in an 8-hour work day. (Tr. at 313-15.)

I therefore suggest that the ALJ's credibility finding is supported by substantial evidence and should not be disturbed.

### b. RFC Analysis, Including SSR 96-8p

Although Plaintiff argues that the ALJ did not give adequate consideration to the medical evidence and medical source opinions, I suggest that the ALJ properly considered the record evidence and adequately explained his reasons for doing so (Tr. at 16-22), thereby satisfying the regulation. *See* SSR 96-8p, at *5 (the ALJ may consider evidence such as the claimant's credibility, whether findings are supported by objective medical evidence, and corroboration from other physicians of record).

After treating sources, a "nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). Therefore, I suggest that the ALJ properly prioritized examining physicians and psychologists over non-examiners.

The hypothetical assumed a person who:

> could occasionally lift and carry 10 pounds; could stand and walk for at least two hours of an eight hour day, sit for six hours of an eight hour day, normal breaks and rest periods for both; no limitations with regard to pushing, pulling, operation of hand or foot controls; occasional kneeling, crouching; no climbing of ladders or scaffolds; occasional ramps and stairs. Further limited to simple, routine tasks consistent with unskilled work. No requirement for mathematical calculations, no cashier work, or telework. Further limited to occasional contact with the general public.

(Tr. at 48.) The weight restrictions and limitations on sitting, standing and walking described in the hypothetical were more restrictive than given by Dr. Tofaute. (Tr. at 313-15.) The hypothetical assumed a person who could stand and walk for two and sit for six hours of an eight-hour day; whereas, Dr. Tofaute concluded that Plaintiff could not only sit for 3 to 4 hours, but could also stand for 1 to 2 hours and walk for 4 to 5 hours in an 8-hour work day. (Tr. at 313-15.) Although Plaintiff complains that the ALJ reconfigured Dr. Tofaute's findings, I suggest that any changes were made in Plaintiff's favor and thus could only have been, at most, harmless error. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (harmless error doctrine applies in social security cases).

The hypothetical's limitation to simple, routine tasks consistent with unskilled work, no requirement for mathematical calculations, and occasional contact with the general public is fully supported by Dr. Horner's findings. Dr. Horner concluded that Plaintiff was not limited in her ability to understand, remember, and carry out simple instructions and that she was only mildly limited in her ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions. (Tr. at 302.) Dr. Horner underlined "complex" in all these categories. (*Id.*) Dr. Horner also found Plaintiff to be mildly limited in her ability to interact appropriately with the public, supervisors, co-workers, and to respond to usual work situations and changes in routine work setting. (Tr. at 303.) Finally, the hypothetical even captured Dr. Horner's opinion that Plaintiff was only operating at the second grade level for arithmetic. (Tr. at 300.)

I therefore suggest that the ALJ's RFC analysis as provided in hypothetical was supported by substantial evidence stemming directly from the opinions of the examining medical sources.

18

I further suggest that the RFC analysis was in harmony with the objective record medical evidence and Plaintiff's own statements that she has no problems with personal care, does not need reminders, prepares "complete meals" on a "daily" basis, cleans "daily," washes her clothing, goes out "about once a week," shops in stores for clothes and food, attends church every Sunday, and is able to handle finances, but that she is scared to go out alone. (Tr. at 208-11.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

|  |  |
|---|---|
|  | s/ Charles E. Binder |
|  | CHARLES E. BINDER |
| Dated: January 8, 2013 | United States Magistrate Judge |

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: January 8, 2013      By    s/Patricia T. Morris
                                        Law Clerk to Magistrate Judge Binder